Argued May 2, affirmed September 10, 1973

GARRISON, *Appellant, v.* SEIBER ET AL,
*Respondents.*
513 P2d 1180

*Edwin J. Peterson,* Portland, argued the cause for appellant. With him on the briefs were Stephen R. Frank, and Tooze, Kerr & Peterson, Portland; and Thomas Garrison, Roseburg.

*George F. Weigum,* Roseburg, argued the cause and filed a brief for respondent.

HOWELL, J.

Plaintiff, a trustee in bankruptcy, filed this suit to set aside a conveyance from the defendant Seiber to the defendant Summers on the ground the convey-

ance was made in fraud of creditors. The trial court entered a decree dismissing the suit, and plaintiff appeals.

In 1968 defendant Seiber and his then wife purchased a house and approximately five acres of real property in southern Oregon for $13,400. The purchase was financed by a mortgage to the Veterans' Administration for the amount of the purchase price. Subsequently Seiber's wife, who had filed a divorce suit, conveyed her interest in the property to Seiber. Seiber became indebted to a credit union for approximately $2,900 and was also obligated for attorney fees and child support resulting from the divorce. He became employed in a tavern owned by the defendant Maxine Summers. Mrs. Summers also had a home in Coos Bay, but she and Seiber lived together on the subject property. In May, 1969, Seiber conveyed the real property to Mrs. Summers. She assumed the mortgage, the balance of which amounted to approximately $13,000. Seiber was also indebted to Mrs. Summers for two payments of $100 each on the mortgage, but the payments were forgiven as part of the consideration in the sale. Approximately a year later Mrs. Summers conveyed the property to defendant Wilma Blair.

Mrs. Summers testified that she conveyed the property to Wilma Blair because she did not want it involved in a divorce suit which she was filing against her husband. We accept defendant Blair's testimony that she had no interest in the property and was merely holding the title for Mrs. Summers. Seiber filed his petition in bankruptcy in August, 1971, approximately two years after the conveyance to Mrs. Summers, and the trustee in bankruptcy filed this suit to set aside the conveyance from Seiber to Mrs. Summers on the ground the conveyance was in fraud of creditors.

The trial court found that the conveyance did not constitute a fraudulent transfer apparently for the reason that the property constituted Seiber's homestead and was therefore exempt from the claims of creditors.[1]

There was evidence that Seiber was employed at only $200 per month at the time of the transfer from Seiber to Mrs. Summers in May, 1969. The payments on the mortgage were approximately $100 per month; he was indebted for child support and attorney fees from the prior divorce, and owed a substantial amount on the note to the credit union. On the other hand, Seiber testified that he conveyed the property because he wanted to be free of the monthly payments. Also, Seiber's equity in the property was minimal at best, as he had made only 11 monthly payments of approximately $100, which included interest and taxes. He had made no improvements on the property prior to the conveyance to Mrs. Summers, and there was evidence that the market value of the property was about equal to the balance owed on the mortgage.

■ Assuming, arguendo, that Seiber had the moral intent to place the property out of the reach of his creditors, particularly the credit union, as a matter of law the transfer could not be in fraud of creditors. The property qualified as his homestead and, to the extent of the statutory exemption of $7,500, the property was completely exempt from any claims of creditors. *Smith v. Kay,* 153 Or 80, 54 P2d 1160, 55 P2d 794 (1936); *Stewart v. Black,* 143 Or 291, 22 P2d

---

[1] ORS 23.240 (1) provides that a "homestead shall be exempt from sale on execution from the lien of every judgment and from liability in any form for the debts of the owner to the amount in value of $7,500 * * *."

336 (1933); 37 Am Jur 2d 785, Fraudulent Conveyances, § 103 (1968); Lacy, *Homestead Exemption— Oregon Law. A Postscript,* 34 Or L Rev 1, 15 (1954). The same rule applies in bankruptcy proceedings. "When the homestead is within the maximum exemption allowed by the local homestead law, and when the claims of creditors are subject to the exemption, a conveyance of the homestead cannot be fraudulent. Thus, a conveyance of homestead property by itself can never be set aside as a fraudulent conveyance by a trustee in bankruptcy." Haskins, *Homestead Exemptions,* 63 Harv L. Rev 1289, 1318. *See also* 1 Collier on Bankruptcy (14th ed) 842, § 6.11.

■ The evidence is clear that Seiber's equity in the property was less than the $7,500 statutory exemption. An appraiser for the plaintiff, who made a rather cursory appraisal, testified to a value of $15,000 to $16,000 for the property as of May, 1969, the time of the conveyance. The chief county appraiser testified to a value of $12,970 in 1969. In any event, even if we accept the $16,000 value of the plaintiff's appraiser, the record shows that Seiber owed approximately $13,000 at the time of the conveyance, and his equity would therefore be within the limit of the statutory exemption.

The plaintiff's primary argument is that the defendants cannot raise the issue that the property was exempt as a homestead because Seiber, who was both the grantor of the deed and the petitioner in bankruptcy, did not claim the homestead exemption in his petition in bankruptcy nor allege it as a defense in this suit to set aside the conveyance.

Plaintiff relies on the decision of this court in *Branchfield, Trustee, v. McCulley et al.,* 192 Or 270,

231 P2d 771, 235 P2d 334 (1951). That case, like the instant case, was a suit by a trustee in bankruptcy to set aside a conveyance as being in fraud of creditors. The grantors had not listed the property as a homestead exemption in their petition in bankruptcy nor alleged it as a defense in the trustee's suit to set aside the conveyance. However, the grantee of the homestead had alleged the homestead exemption as a defense in his answer. This court held that the homestead exemption could not be raised as a defense because it had not been claimed in the petition in bankruptcy nor affirmatively alleged by the grantors as a defense in the suit to set aside the conveyance. The court held the grantee could not claim the homestead exemption because it was personal to the grantors.

In *Smith v. Popham,* decided this day, we expressly overruled *Branchfield* to the extent that it held the grantee of a homestead is not entitled to raise the homestead exemption as a defense in a suit to set aside the transfer as being in fraud of creditors.

■ We now also overrule the statement in *Branchfield* that in a suit brought by a trustee in bankruptcy to set aside a conveyance for being in fraud of creditors, the grantors (and the petitioners in bankruptcy) cannot contend the property was exempt as a homestead unless they claimed the exemption in the bankruptcy petition.

■ The general rule is that title to exempt property does not vest in the trustee in bankruptcy and as it is *"not an asset of the bankrupt estate, creditors could have no concern as to its disposition."* (Emphasis supplied.) 1 Collier on Bankruptcy, supra at 847, *and see* cases cited in footnote 12 therein. In *Stewart v.*

*Black,* supra, we expressly held that the failure of the petitioner in bankruptcy to claim a homestead exemption in the petition did not preclude her from raising the defense in a suit to set aside the conveyance of the homestead property.

■ It is true in the instant case that neither defendant Seiber as grantor nor the defendant Mrs. Summers as grantee affirmatively alleged the homestead exemption as a defense. There is a conflict of authority as to whether the exemption should be affirmatively pleaded or is admissible under a general denial.[2] In any event, evidence concerning the homestead and its value was introduced in this case without objection, and the question of whether a conveyance of property exempt as a homestead could be in fraud of creditors was one of the issues presented to and decided by the court. Plaintiff's contention that the homestead exemption cannot be considered is without merit.

■ Plaintiff also contends that as a judgment had been entered and a writ of execution issued against Seiber at the time he conveyed the property to Mrs. Summers, he should have filed a statement under ORS 23.270 (2) claiming the exemption. That statute provides that when a judgment is entered against a homestead owner he *may* file a statement setting forth the nature of his homestead claim. However, subsection (1) of that statute also states that whenever a levy is made upon a homestead the owner thereof may claim the homestead at any time *prior to sale.* In the instant case there has been no sale, and execution upon the judgment referred to was not on the homestead property. In this regard the statement of this court

_____

[2] Annot., 154 ALR 913 (1945).

in *Willamette C. & C. Ser. v. Henry,* 138 Or 460, 7 P2d 261 (1932), is particularly appropriate to the instant case:

"The defendant is in court claiming his exemption. This he may do 'at any time before sale,' and the court must give heed to his claims and relieve the homestead from such claims from which the statute says it is exempt. The court cannot impress it with a lien." 138 Or at 466.

Affirmed.